1  RON BENDER (SBN 143364)
   TODD M. ARNOLD (SBN 221868)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: rb@lnbyb.com, tma@lnbyb.com

6  Proposed Counsel for Chapter 11 Debtor and Debtor in Possession

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11 | In re: | Case No. 2:11-bk-40120-ER |
|---|---|
12 | PACIFICUS REAL ESTATE GROUP, a California corporation, | Chapter 11 |
13 | | **DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) PAY PRE-PETITION PRIORITY WAGES; (2) HONOR ACCRUED VACATION AND LEAVE BENEFITS; AND (3) OBTAIN UNSECURED CREDIT ENTITLED TO ADMINISTRATIVE PRIORITY PURSUANT TO 11 U.S.C. § 364(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PAUL J. GIUNTINI IN SUPPORT THEREOF** |
14 | Debtor and Debtor in Possession. | |
15 | | |
16 | | |
17 | | |
18 | | |
19 | | |
20 | | |
21 | | **Hearing** |
22 | | Date:     TBD[1] |
| | Time:     TBD |
23 | | Place:     Courtroom 1568 |
| | 255 E. Temple Street |
24 | | Los Angeles, CA 90012 |

25

26

27  [1] Concurrently herewith, the Debtor has filed an application for a hearing on shortened time. The Debtor will provide additional notice once a hearing date is set.

28

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES……………………………… 7

I.    STATEMENT OF FACTS…………………………………………… 7

    A.    CASE BACKGROUND AND REASON FOR FILING ………………. 7
            BANKRUPTCY.

    B.    THE NECESSITY TO PAY PRE-PETITION PRIORITY WAGES
            AND HONOR VACATION AND OTHER LEAVE BENEFITS……….. 10

    C.    THE NECESSITY TO OBTAIN FUNDING……………………………… 11

II.    DISCUSSION………………………………………………………… 12

    A.    THE COURT SHOULD ALLOW THE DEBTOR TO PAY
            THE WAGES…………………………………………………… 12

        1.    PAYMENT OF CERTAIN PRE-PETITION WAGES IS
               PERMISSIBLE UNDER 11 U.S.C. § 507(a)(4)……………… 12

        2.    THIS COURT HAS THE AUTHORITY TO GRANT
               THE RELIEF REQUESTED HEREIN…………………………. 12

        3.    SUFFICIENT EVIDENCE HAS BEEN PROVIDED,
               IN COMPLIANCE WITH LOCAL BANKRUPTCY
               RULE 2081-1(a)(6) OF THE UNITED STATES
               BANKRUPTCY COURT FOR THE CENTRAL DISTRICT
               OF CALIFORNIA, TO GRANT THE RELIEF
               REQUESTED HEREIN………………………………………… 14

        4.    THE RELIEF REQUESTED HEREIN IS NECESSARY TO
               AVOID IMMEDIATE AND IRREPARABLE HARM AND
               IS THEREFORE WARRANTED UNDER RULE 6003 OF
               THE FEDERAL RULES OF BANKRUPTCY PROCEDURE….. 16

    B.    THE COURT SHOULD ALLOW THE DEBTOR TO OBTAIN
            THE LOAN PURSUANT TO THE CREDIT AGREEMENT…………. 17

        1.    THE APPLICABLE STANDARD……………………………… 17

        2.    THE DEBTOR'S DECISION TO OBTAIN THE LOAN
               FROM THE TRUST PURSUANT TO THE CREDIT
               AGREEMENT SATISFIED THE REQUIREMENTS OF
               SECTION 364 AND APPLICABLE CASE AUTHORITY……… 18

        3.    THE LOAN SHOULD BE APPROVED ON AN
               INTERIM BASIS PENDING A FINAL HEARING……………… 19

4.    THE DEBTOR HAS SATISFIED ALL PROCEDURAL
REQUIREMENTS REGARDING APPROVAL OF THE
LOAN................................................................. 20

III.    CONCLUSION................................................................. 20

DECLARATION OF PAUL J. GIUNTINI................................................ 22

EXHIBIT 1............................................................................. 29

EXHIBIT 2............................................................................. 31

EXHIBIT 3............................................................................. 33

EXHIBIT 4............................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)
29 B.R. 391 (S.D.N.Y. 1983) ................................................................. 13

Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.)
45 B.R. 555 (Bankr. D. Vt. 1984) ......................................................... 13

Green v. Drexler (In re Feit & Drexler, Inc.)
760 F.2d 406 (2d Cir. 1985) ................................................................. 12

In re Ames Dept. Stores
115 B.R. 34 (Bankr. S.D.N.Y. 1990)..................................................... 18

In re Ionosphere Clubs, Inc.
98 B.R. l74 (Bankr. S.D.N.Y. l989) ................................................12, 13

In re Photo Promotion Associates, Inc.
87 B.R. 835 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6 (2d. Cir. 1989).........................17, 18

In re Simasko Production Co.
47 B.R. 444 (D. Colo.1985) .................................................................. 18

In re T.M. Sweeney & Sons LTL Services, Inc.
131 B.R. 984 (Bankr.N.D.Ill.1991) ...................................................... 17

**STATUTES**

11 U.S.C. § 364 ..............................................................................17, 18

11 U.S.C. § 364(d) ............................................................................... 18

11 U.S.C. § 507 ..............................................................................14, 15

11 U.S.C. § 507(a)(4) ...............................................................12, 15, 26

**OTHER AUTHORITIES**

2 Collier on Bankruptcy ¶ 105.01 at 105-3 (15th ed. rev. 1998) ................................................. 12

Am. Bankr. L.J. 173 (1980) ........................................................................................... 13

Fed.R.Bankr.P. 4001(c)(2)............................................................................................. 19

Fed.R.Bankr.P. 6003 .................................................................................................... 16

Fed.R.Bankr.P. 4001(c) .............................................................................................19, 20

Fed.R.Bankr.P. 2081-1(a)(6) ......................................................................................... 14

Fed.R.Bankr.P. 4001(c)(1)(B) (i) ................................................................................... 20

1

## SUMMARY

2      Pursuant to Local Bankruptcy Rules 2081-1(a)(6) and (12) and 9075-1, 11 U.S.C. §§

3  105(a), 364, and 507(a)(4), and Rules 4001 and 6003 of the Federal Rules of Bankruptcy

4  Procedure, PacificUS Real Estate Group, a California corporation and the Chapter 11 debtor and

5  debtor in possession herein (the "Debtor"), hereby brings this emergency motion (the "Motion")

6  for the entry of an order authorizing the Debtor (1) to pay pre-petition priority wages,

7  commissions, benefits, and reimbursable expenses (collectively, "Wages") to the Debtor's

8  employees, (2) to honor pre-petition accrued vacation and leave benefits in the ordinary course of

9  the Debtor's business, provided that no employee shall receive in value over $11,725 on account

10  of the foregoing pre-petition claims, and (3) to obtain unsecured credit in an amount up to

11  $250,000 entitled to administrative priority pursuant to 11 U.S.C. § 364(b) in order to pay the

12  Wages and certain other operating expenses of the Debtor.

13      The Debtor filed its bankruptcy case on July 14, 2011 (the "Petition Date"). The Debtor

14  currently employs ten (10) individuals (the "Employees"). Three (3) of the Employees are

15  insiders and seven (7) of the Employees are non-insiders. Four (4) of the non-insider Employees

16  provide services to Hatchet Ranch L.C. ("Hatchet Ranch"), an unaffiliated entity for which the

17  Debtor provides management services for a monthly fee of $5,000.

18      The Debtor is not seeking authority to pay the pre-petition priority Wages of any

19  "insiders" at this time. Insiders are included in Exhibit "1" hereto showing all pre-petition

20  priority wages. Insiders are denoted by shading in Exhibit "1." Notices of Setting Insider

21  Compensation will be/have been filed with the United States Trustee for all insiders. Only once

22  the Motion is granted and the deadline to respond to the Notices of Setting Insider Compensation

23  has passed without objection, or any objections to the notices have been resolved, will the Debtor

24  pay the pre-petition priority wages of the insiders included in Exhibit "1."

25      The Employees are paid bi-weekly. The last pay period covered July 2, 2011 through July

26  15, 2011 (the "Pay Period"). Accordingly, since the Debtor's bankruptcy petition was filed on

27  July 14, 2011, nearly all Wages for the Pay Period accrued pre-petition. In particular, the Wages

28

2

to be paid to the employees for the pre-petition portion of the Pay Period are approximately $16,454.55, plus all applicable federal and state withholding taxes and workers' compensation charges. All Wages and related payroll taxes are paid through ADP, the Debtor's payroll processor. Hatchet Ranch reimburses the Debtor for all funds transferred to ADP to pay the Wages for the four (4) Employees providing services for Hatchet Ranch. In order to fund the wages for the Pay Period, the Debtor must fund ADP by July 20, 2011.

Needless to say, the Debtor cannot continue to operate and reorganize, or obtain management fees from Hatchet Ranch, without the Employees. If the Debtor does not continue to pay the Employees their ordinary and earned Wages and continue to honor employee benefits, the morale of the Employees will drop significantly, and the Employees will likely quit. Without the Employees, the Debtor's operations and the value of its business will be severely impaired, if not eviscerated altogether. The Debtor must retain the Employees to remain in business and preserve the value of its assets. Based on the foregoing, the Debtor respectfully submits that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

As of the Petition Date, the Debtor only had approximately $31,000 in its bank accounts. Some of these funds may constitute the "cash collateral" of certain of the Debtor's secured creditors. The Debtor would need to obtain approval form the appropriate secured creditors or from the Court in order to use any "cash collateral." The Debtor intends to fund operations through unsecured third-party lending to avoid "cash collateral" issues. Accordingly, these funds will be segregated and will not be disbursed without the required approval. Therefore, the Debtor essentially has no money it can use to pay the Wages and fund its operations.

Leading up to the Petition Date, the Debtor has often funded Wages and other operational expenses, in part, through loans from Paul J Giuntini, the Debtor's President and only voting shareholder, through Mr. Giuntini's trust, The Paul J. Giuntini Revocable Trust Dated July 31, 1997 (the "Trust"). The Debtor wishes to obtain an additional loan from the Trust in the form of a revolving line of credit in an amount up to $250,000 (the "Loan") in order to pay the Wages and to fund operations as set forth in Exhibit "2" hereto. Mr. Giuntini has agreed to provide such

3

Loan pursuant to the Revolving Credit Agreement attached hereto as Exhibit "3" (the "Credit Agreement"). A summary of the terms of the Credit Agreement are as follows: (a) $250,000 limit, (b) 10% interest per annum, compounded monthly, (c) due and payable on January 31, 2012, and (d) an event of default occurs if the Debtor fails to timely pay amounts owed under the Credit Agreement. Pursuant to Section 364(b) of the Bankruptcy Code, amounts owed for the Loan will be allowed under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

As discussed below, after considering the secured debt against the Debtor's assets and the fair market value of such assets, allowing the Debtor to obtain the Loan and pay the Wages will not render the Debtors' bankruptcy estates administratively insolvent.

## ADDITIONAL INFORMATION

Pursuant to Rule 4001(c) and Local Bankruptcy Rule 4001-2, the Debtors make the following statements regarding the relief requested in the Motion regarding the Loan, the proposed interim order thereon attached hereto as Exhibit "4" and any final order thereon:

| Provision | Description and Location |
|---|---|
| Cross-collateralization clauses | No. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt. | No. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation, or which create a lien senior or equal to any existing lien. | No. |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds. | No. |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No. |
| Releases of liability for the creditor's alleged prepetition torts or breaches of | No. |

4

| Provision | Description and Location |
|---|---|
| Contract. | |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No. |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No. |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | No. |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No. |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. |
| Findings of fact on matters extraneous to the approval process. | No. |

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor served a copy of this Motion and all supportive papers (including notice of the hearing) upon the Office of the United States Trustee, all alleged secured creditors and their counsel (if known), and the Debtor's 20 largest unsecured creditors via overnight mail. These parties will receive delivery of the Motion and all supportive papers by not later than the morning of July 20, 2011.

**WHEREFORE**, the Debtor respectfully requests that this Court hold a hearing on the Motion and issue an order:

(1)     affirming the adequacy of the notice given;

(2)     finding that the relief requested in the Motion is necessary to avoid immediate and irreparable harm;

(3)     authorizing the Debtor to (a) pay and/or honor all pre-petition priority Wages (including all applicable federal and state withholding taxes) to the Employees as requested

herein, including, without limitation, any outstanding checks for Wages issued pre-petition to the Employees and the issuing of replacement checks to the extent necessary to pay such Wages; and (b) honor accrued vacation and leave benefits in the ordinary course of business, provided that no employee shall receive in value over $11,725 on account of such pre-petition claims for Wages and vacation and leave benefits;

(4)    authorizing the Debtor to draw down so much of the Loan that is needed to fund the Wages and operating expenses pending a final hearing on the Motion;

(5)    setting a final hearing on the Motion, insofar as it relates to authorizing the Debtor to obtain the Loan; and

(6)    granting such other and further relief as the Court deems just and proper.

Dated: July 19, 2011                          PACIFICUS REAL ESTATE GROUP

                                              */s/ Todd M. Arnold*
                                              RON BENDER
                                              TODD M. ARNOLD
                                              LEVENE, NEALE, BENDER, YOO
                                                & BRILL L.L.P.
                                              Proposed Counsel for Debtor and
                                              Debtor in Possession

6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

### A.    CASE BACKGROUND AND REASON FOR FILING BANKRUPTCY.

1.    PacificUS Real Estate Group, a California corporation and the Chapter 11 debtor and debtor in possession herein (the "Debtor"), commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code")[1] on July 14, 2011 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor owns the following equity interests (the "Equity Property"):

a.    100% of the equity of PJG/LP Corp., a California corporation ("PJG/LP") – PJG/LP has passive investments in limited partnerships in real estate with no other current or past activities. The Debtor estimates that its equity interest in PJG/LP is worth approximately $1 million.

b.    100% of the equity of CFG Realty, Inc., a Delaware corporation ("CFG Inc."), the sole member of CFG/SC, LLC, a Texas limited liability corporation ("CFG LLC"), the general partner and 1% owner of Santa Clarita Investors L.P., a Texas limited partnership ("Santa Clarita LP") – Santa Clarita LP has passive investments. Santa Clarita LP has an option from Petro Resources (a non-affiliated Texas corporation) for 86.8 acres located in Santa Clarita. Santa Clarita LP entered into option agreement with Heritage Hills Ranch, LLC regarding the subject property. PJS Investment Corp. and Petro Resources (a non-affiliated Texas corporation) are the limited partners. The Debtor estimates that its equity interest in the foregoing entities is worth $0.

---

[1] Unless otherwise stated, all section references herein are to the Bankruptcy Code.

7

c.       100% of the equity of Heritage Hills Ranch, LLC ("Heritage Hills LLC") –

Heritage Hills LLC was established to obtain entitlements for the 86.8 acres under option

from Santa Clarita LP.  The Debtor estimates that its equity interest in Heritage Hills LLC is

worth approximately $5 million.

d.       30% of the equity of PacSun, LLC ("PacSun LLC") – PacSun LLC currently

has receivables in excess of $9 million.  The Debtor estimates that its equity interest in

PacSun LLC is worth approximately $3.3 million.

3.       The Debtor's personal property, other than the Equity Property, includes, furniture,

fixtures, equipment, and tenant improvements at a leased office location (the "Personal Property")

with a total fair market value of approximately $81,003.02 calculated as cost, less accumulated

depreciation.

4.       In addition to the Equity Property and the Personal Property, the Debtor also owns

contiguous parcels of real property located at 7733, 7739 Fish Camp Lane, 7625 Forest Drive,

Mariposa, CA, and 1195 Highway 41, Fish Camp, CA 93623 and commonly referred to as the

"SilverTip Property."  The SilverTip Property, which is located at the south entrance of Yosemite

National Park, is extremely unique and includes the following:

a.       approximately .18 acres on which there is an existing post office building of

approximately 1,120 square feet (the "Post Office Property").    The United States

Government is the tenant on the Post Office Property and pays monthly rent of

approximately $2,100.  Such monthly rent will be placed into a segregated account and will

not be used without further order of the Court or the agreement of any secured creditors with

an interest in such rent.

b.       approximately 2.56 acres zoned for family / residential use in lots with a

minimum size of .5 acres (the "Residential Property").

c.       approximately 44.64 acres zoned for resort / commercial use (the "Resort

Property").    The Resort Property is fully entitled for the development of a resort hotel

consisting of (a) a 4-story, 137 room main hotel & spa (approximately 112,000 square feet),

(b) 30 chalets with 3 rooms each (approximately 54,000 square feet), (c) a main conference center (approximately 11,000 square feet), (d) 20 apartment units (approximately 14,000 square feet), (e) a commercial building (approximately 14,000 square feet), and (f) roads, parking, trails and appurtenant uses, and an on-site waste water treatment. It took the Debtor over 10 years to obtain the foregoing entitlements, and the Debtor believes that obtaining such entitlements on a similar property would take longer and be more expensive and riskier. The Debtor holds all major federal and state permits and clearances required to develop the Real Property as set forth above.

d.      approximately .46 acres on which there is a gas station (the "Residential Property") that is not operating and has not operated for some time.

5.     The Debtor is concurrently seeking to sell the SilverTip Property or to obtain a joint venture partner to fully develop the SilverTip Property.

6.     On or about March 16, 2011, the Debtor obtained an appraisal for the Resort Property, which provided an appraised value of $18.5 million on an "as-is" basis.

7.     OneWest Bank, FCB (the "Bank") (successor to La Jolla Bank, FSB) allegedly has a first trust deed against the SilverTip Property securing a claim in the amount of approximately $5,587,158 for a loan made to the Debtor (the "Loan"). Evelyn and Robert Keller (the "Kellers") allegedly have second and third trust deeds against the Post Office Property, the Residential Property, and the Resort Property securing a claim in the total amount of approximately $650,022.

8.     The Loan matured in July 2010. The Bank filed a notice of default and scheduled a foreclosure sale of the SilverTip Property for July 15, 2011. In order to protect the Debtor's interest in the approximately $12.2 million of equity in the SilverTip Property, as well as the interests of the Debtor's unsecured creditors, the Debtors were forced to file their bankruptcy case. The Debtors intend to reorganize through a sale of the SilverTip Property or a joint venture to develop the SilverTip Property. The Debtor needs some time to accomplish either of the foregoing.

**B.** **THE NECESSITY TO PAY PRE-PETITION PRIORITY WAGES AND HONOR VACATION AND OTHER LEAVE BENEFITS.**

9. The Debtor currently employs ten (10) individuals (the "Employees"). Three (3) of the Employees are insiders and seven (7) of the Employees are non-insiders. Four (4) of the non-insider Employees provide services to Hatchet Ranch L.C. ("Hatchet Ranch"), an unaffiliated entity for which the Debtor provides management services for a monthly fee of $5,000.

10. The Employees are paid bi-weekly. The last pay period covered July 2, 2011 through July 15, 2011 (the "Pay Period"). Accordingly, since the Debtor's bankruptcy petition was filed on July 14, 2011, nearly all Wages for the Pay Period accrued pre-petition. In particular, the Wages to be paid to the employees for the pre-petition portion of the Pay Period are approximately $16,454.55, plus all applicable federal and state withholding taxes and workers' compensation charges. All Wages and related payroll taxes are paid through ADP, the Debtor's payroll processor. Hatchet Ranch reimburses the Debtor for all funds transferred to ADP to pay the Wages for the four (4) Employees providing services for Hatchet Ranch. In order to fund the wages for the Pay Period, the Debtor must fund ADP by July 20, 2011.

11. The Employees have also accrued vacation and leave benefits pre-petition. In the ordinary course of the Debtor's business, the Employees are authorized to take their accrued vacation or leave time in connection with their continued service. Maintaining good relationships with, and the morale of, the Employees requires continuing to honor vacation and leave policies currently in effect for the Employees. By this Motion, the Debtor also seeks authority to honor post-petition these policies for the benefit of the Employees in order to allow the Employees to take their accrued vacation or leave time in the ordinary course of business.

12. Needless to say, the Debtor cannot continue to operate and reorganize, or obtain management fees from Hatchet Ranch, without the Employees. If the Debtor does not continue to pay the Employees their ordinary and earned Wages and continue to honor employee benefits, the morale of the Employees will drop significantly, and the Employees will likely quit. Without the Employees, the Debtor's operations and the value of its business will be severely impaired, if not

eviscerated altogether. The Debtor must retain the Employees to remain in business and preserve the value of its assets. Based on the foregoing, the Debtor respectfully submits that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

13. Pursuant to the Motion, the Debtor is seeking to pay the Employees their Wages. The Debtor is not seeking authority to pay the pre-petition priority Wages of any "insiders" at this time. Insiders are included in Exhibit "1" hereto showing all pre-petition priority wages. Insiders are denoted by shading in Exhibit "1." Notices of Setting Insider Compensation will be/have been filed with the United States Trustee for all insiders. Only once the Motion is granted and the deadline to respond to the Notices of Setting Insider Compensation has passed without objection, or any objections to the notices have been resolved, will the Debtor pay the pre-petition priority wages of the insiders included in Exhibit "1."

## C.   THE NECESSITY TO OBTAIN FUNDING.

As of the Petition Date, the Debtor only had approximately $31,000 in its bank accounts. Some of these funds may constitute the "cash collateral" of the Bank or the Kellers. The Debtor would need to obtain approval form the Bank, the Kellers, and/or the Court in order to use any "cash collateral." The Debtor intends to fund operations through unsecured third-party lending to avoid "cash collateral" issues. Accordingly, the foregoing funds will be segregated and will not be disbursed without the required approval. Therefore, the Debtor essentially has no money it can use to pay the Wages and fund its operations

Leading up to the Petition Date, the Debtor has often funded Wages and other operational expenses, in part, through loans from Paul J Giuntini, the Debtor's President and only voting shareholder, thorough Mr. Giuntini's trust, The Paul J. Giuntini Revocable Trust Dated July 31, 1997 (the "Trust"). The Debtor wishes to obtain an additional loan from the Trust in the form of a revolving line of credit in an amount up to $250,000 in order to pay the Wages and to fund operations (the "Loan") as set forth in Exhibit "2" hereto. Mr. Giuntini has agreed to provide such Loan pursuant to the Revolving Credit Agreement attached hereto as Exhibit "3" (the "Credit Agreement"). A summary of the terms of the Credit Agreement are as follows: (a) $250,000 limit,

11

1    (b) 10% interest per annum, compounded monthly, (c) due and payable on January 31, 2012, and

2    (d) an event of default occurs if the Debtor fails to timely pay amounts owed under the Credit

3    Agreement  Pursuant to Section 364(b) of the Bankruptcy Code, amounts owed for the Loan will be

4    allowed under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

## II.

## DISCUSSION

## A.    THE COURT SHOULD ALLOW THE DEBTOR TO PAY THE WAGES.

### 1.    PAYMENT OF CERTAIN PRE-PETITION WAGES IS PERMISSIBLE UNDER 11 U.S.C. § 507(a)(4).

Section 507(a)(4) of the Bankruptcy Code provides priority to claimants, up to $11,725 per individual, for wages, salaries, or commissions, including vacation, insurance, and sick leave earned by individuals within 180 days prior to the filing of a case under Chapter 11 of the Bankruptcy Code.

### 2.    THIS COURT HAS THE AUTHORITY TO GRANT THE RELIEF REQUESTED HEREIN.

Pursuant to Section 105(a) of the Bankruptcy Code, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The basic purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid in their jurisdiction."  2 Collier on Bankruptcy ¶ 105.01 at 105-3 (15th ed. rev. 1998).  Essentially, Section 105(a) codifies the bankruptcy court's inherent equitable powers. See Green v. Drexler (In re Feit & Drexler, Inc.), 760 F.2d 406 (2d Cir. 1985).

Where business exigencies require, courts have authorized debtors to pay the pre-petition claims of particular creditors.  In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr. S.D.N.Y. 1989). The "Necessity of Payment Rule" empowers a court to authorize a debtor to pay pre-petition claims essential to continued operations. Id. at 175-76, citing Miltenberger v. Logansport, C. & S. W .R. Co., 106 U.S. 286 (1882):

12

**3.      SUFFICIENT EVIDENCE HAS BEEN PROVIDED, IN COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2081-1(a)(6) OF THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, TO GRANT THE RELIEF REQUESTED HEREIN.**

Local Bankruptcy Rule 2081-1(a)(6) provides that motions to pay pre-petition payroll and to honor pre-petition employment procedures must be supported with evidence that establishes:

      (A)      The employees are still employed;
      (B)      The necessity for payment;
      (C)      The benefit of the procedures;
      (D)      The prospect of reorganization;
      (E)      Whether the employees are insiders;
      (F)      Whether the employees' claims are within the limits established by 11 U.S.C. § 507; and that
      (G)      The payment will not render the estate administratively insolvent.

LBR 2081-1(a)(6).

The foregoing factors are discussed individually below:

•      The employees are still employed. Attached as Exhibit "1" to the annexed Declaration of Paul J. Giuntini (the "Giuntini Declaration") is a summary report that reflects the amount of Wages the Debtor intends to pay to the Employees on July 22, 2011 (or as soon as practicable thereafter) for period covering July 2, 2011 through July 15, 2011. All of the Employees who the Debtor intends to pay on July 22, 2011 are still employed by the Debtor.

•      The necessity for payment. As discussed, the Debtor cannot continue to operate and reorganize without its Employees. The Debtor believes that many of the Employees will quit if they are not paid their salaries and benefits in full in a timely fashion. The Employees would have a decreased incentive to continue working for the Debtor if they are not paid their salaries and benefits in a timely fashion and may seek new employment elsewhere. The Debtor must retain the Employees to continue its business operations without interruption and preserve and maximize the value of its assets during this case. The Debtor's personnel are familiar with the Debtor's operations, and, thus,

14

> The 'necessity of payment' doctrine permits immediate payment of claims
> of creditors where those creditors will not supply services or materials
> essential to the conduct of the business until their pre-reorganization
> claims have been paid.

Ionosphere Clubs, 98 B.R. at 176, quoting In re Leigh and New England Railway Company, 657 F.2d 570, 581 (3rd Cir. 1981). This rule applies in all Chapter 11 cases because "the rationale for the necessity of payment rule, i.e., facilitating the continued operation and rehabilitation of the debtor . . . is . . . a paramount goal of chapter 11." Ionospere Clubs, 98 B.R. at 176, citing Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945). Therefore, where continued operation and rehabilitation of the debtor require payment of pre-petition wages, the Court may authorize such payment under Sections 363(b) and/or 105(a) of the Bankruptcy Code.

In Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 394 (S.D.N.Y. 1983), the district court recognized the "special status" of suppliers holding unstayed lien rights, and authorized the debtor to pay their claims in the ordinary course of its business activities. See also Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.), 45 B.R. 555 (Bankr. D. Vt. 1984) (rejecting a challenge under section 549 to post-petition payments made to creditor holding lien rights under local law). Similarly, one former bankruptcy judge has recognized that when "confronted with special circumstances . . . particularly in the early stages of the case, a court may preserve the potential for rehabilitation." Ordin, Finality of Order of Bankruptcy Court, 54 Am. Bankr. L.J. 173 (1980).

In In re Gulf Air, Inc., 112 Bankr. 152 (Bankr. W.D. La. 1989), the court noted that cases decided both under the Act and the Code have recognized the "necessity of payment" doctrine under which payment of pre-petition employee claims is authorized prior to the time a plan of reorganization is confirmed so long as absent such payment there is a risk that the services of key employees will be lost to the debtor and without such employees, the debtor's going concern value will be impaired. Id. at 153.

13

essential to the preservation of the Debtor's business. The loss of Employees resulting from the Debtor's failure to pay pre-petition Wages to the Employees and honor the Employees' accrued vacation and leave benefits will likely result in severe disruptions to the Debtor's operations to the detriment of this case. The Debtor's ability to preserve the full value of its business and assets depends upon the Debtor's continued operations, which cannot occur without the efforts of the Employees.

•       The benefit of the procedures. In order to attract and retain Debtor's Employees, among other things, the Debtor maintains what it believes are competitive and reasonable vacation and leave benefits policies. The Debtor believes that maintaining good relationships with, and the morale of, the Employees requires continuing to honor vacation and leave policies currently in effect for the Employees. By this Motion, the Debtor is seeking to honor these policies post-petition in order to allow the Employees to take their accrued vacation or leave time in the ordinary course of business.

•       The prospect of reorganization. The Debtor believes that, through its Chapter 11 case, the Debtor will be able to restructure its debts in a timely and efficient manner.

•       Whether the employees are insiders. The Debtor is not seeking authority to pay the pre-petition priority Wages of any "insiders" at this time. Insiders are included in Exhibit "1" hereto showing all pre-petition priority wages. Insiders are denoted by shading in Exhibit "1." Notices of Setting Insider Compensation will be/have been filed with the United States Trustee for all insiders. Only once the Motion is granted and the deadline to respond to the Notices of Setting Insider Compensation has passed without objection, or any objections to the notices have been resolved, will the Debtor pay the pre-petition priority wages of the insiders included in Exhibit "1."

•       Whether the employees' claims are within the limits established by 11 U.S.C. § 507. As set forth in the Giuntini Declaration, to the extent that any Employees' pre-petition claim is in excess of the $11,725 limit established by Section 507(a)(4) of the

15

Bankruptcy Code, such portion of the pre-petition claim will be treated as a general unsecured claim. No Employee shall receive in value over \$11,725 on account of pre-petition priority claims for Wages and vacation or leave benefits.

• The payment will not render the estates administratively insolvent. As set forth in the Giuntini Declaration annexed hereto, based on the Debtor's current assets and debts, the Debtor does not believe that the payment of pre-petition priority claims for Wages and vacation and leave benefits will render the estate administratively insolvent.

## 4. THE RELIEF REQUESTED HEREIN IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM AND IS THEREFORE WARRANTED UNDER RULE 6003 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE.

Rule 6003 of the Federal Rules of Bankruptcy Procedure states, in relevant part:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:
> [...]
> (b)     a motion to use, sell, lease, or otherwise incur an obligation, regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001; [...]."

Fed.R.Bankr.P. 6003.

The Debtor's failure to pay pre-petition Wages to the Employees and honor the Employees' accrued vacation and leave benefits as requested herein will likely result in severe disruptions to the Debtor's operations and may jeopardize the Debtor's ability to preserve the full value of its business and assets. Accordingly, the Debtor respectfully submits that the payment of the Employees' pre-petition Wages and the honoring of the Employees' accrued vacation and leave benefits within 21 days of the Petition Date are necessary to avoid immediate and irreparable harm and are therefore warranted under Rule 6003 of the Federal Rules of Bankruptcy Procedure.

16

**B.    THE COURT SHOULD ALLOW THE DEBTOR TO OBTAIN THE LOAN**

**PURSUANT TO THE CREDIT AGREEMENT.**

**1.    THE APPLICABLE STANDARD.**

Section 364 provides, in relevant part, as follows:

> (a)    If the trustee [or debtor in possession] is authorized to
> operate the business of the debtor under section . . . 1108, unless
> the court orders otherwise, the trustee [or debtor in possession]
> may obtain unsecured credit and incur unsecured debt in the
> ordinary course of business allowable under section 503(b)(1) of
> this title as an administrative expense.
>
> (b)    The court, after notice and a hearing, may authorize the
> trustee [or debtor in possession] to obtain unsecured credit or to
> incur unsecured debt other than under subsection (a) of this
> section, allowable under section 503(b)(1) of this title as an
> administrative expense.
>
> (c)    If the trustee [or debtor in possession] is unable to obtain
> unsecured credit allowable-under section 503(b)(1) of this title as
> an administrative expense, the court, after notice and a hearing,
> may authorize the obtaining of credit or the incurring of debt –
>
> > (1)  with priority over any and all administrative expenses
> > of the kind specified in section 503(b) or 507(b) of this title:
>
> > (2)  secured by a lien on property of the estate that is not
> > otherwise subject to a lien; or
>
> > (3)  secured by a junior lien on property of the estate that is
> > subject to a lien.

11 U.S.C. § 364.

Section 364 of the Bankruptcy Code is structured with an escalating series of inducements

which a debtor in possession may offer to attract credit during the post-petition period.  In re

Photo Promotion Associates, Inc., 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6

(2d. Cir. 1989).  Therefore, where a trustee or debtor in possession cannot otherwise obtain

unsecured post-petition credit, such credit may be obtained under certain carefully proscribed

conditions.    In re T.M. Sweeney & Sons LTL Services, Inc., 131 B.R. 984, 989

(Bankr.N.D.Ill.1991).  For example, if creditors are unwilling to extend unsecured credit to a

17

1    debtor in possession, further inducements are offered, with court approval after notice and a
2    hearing, including, without limitation, liens equal to or senior to existing liens on encumbered
3    property in accordance with 11 U.S.C. § 364(d). In re Photo Promotion Associates, Inc., 87 B.R.
4    at 839.

5        A debtor's decision to obtain credit under Section 364 are generally analyzed in terms of
6    whether the decision was a prudent exercise of the debtor's business judgment. See, e.g., In re
7    Simasko Production Co., 47 B.R. 444, 448-9 (D. Colo.1985) (authorizing interim financing
8    agreement where debtor's best business judgment indicated financing was necessary and
9    reasonable for benefit of estate); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y.
10   1990) (with respect to post-petition credit, courts "permit debtors-in-possession to exercise their
11   basic business judgment consistent with their fiduciary duties"). See also 2 Collier on Bankruptcy
12   ¶ 364.04, at 364-9-11 (15th ed. 1991).

13       **2.      THE DEBTOR'S DECISION TO OBTAIN THE LOAN FROM THE TRUST**
14   **PURSUANT TO THE CREDIT AGREEMENT SATISFIED THE**
15   **REQUIREMENTS OF SECTION 364 AND APPLICABLE CASE**
16   **AUTHORITY.**

17       Since the Debtor has previously obtained similar loans from the Trust to fund the Debtor's
18   operations, the Debtor could probably proceed with the proposed Loan without Court authority
19   pursuant to Section 364(a). However, due to the fact that the proposed Loan is arguably from an
20   insider and in the interests of full disclosure, the Debtors have decided to seek Court approval for
21   the Loan pursuant to Section 364(b).

22       As discussed above, pursuant to the Credit Agreement, the Trust has agreed to provide the
23   Debtor with a  Loan in an amount up to $250,000 in order to pay the Wages and to fund
24   operational expenses as set forth in Exhibit "2" hereto. The Loan will be provided pursuant to the
25   Revolving Credit Agreement attached hereto as Exhibit "3" (the "Credit Agreement").   A
26   summary of the terms of the Credit Agreement are as follows: (a) $250,000 limit, (b) 10% interest
27   per annum, compounded monthly, (c) due and payable on January 31, 2012, and (d) an event of

28

18

1 default occurs if the Debtor fails to timely pay amounts owed under the Credit Agreement.
2 Pursuant to Section 364(b) of the Bankruptcy Code, amounts owed for the Loan will be allowed
3 under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

4 As discussed, the Debtor only had approximately $31,000 in its bank accounts on the
5 Petition Date and some or all of the foregoing amount may be the cash collateral of the Bank
6 and/or the Kellers. Thus, the use of the foregoing funds would require approval from the Bank,
7 the Kellers, and or the Court. Accordingly, without such approval, the Debtors basically have no
8 money to fund the Wages and ongoing operations. As a result, the Debtor needs the Loan to pay
9 the Wages, to maintain operations, and to further the Debtor's efforts to reorganize. While the
10 Loan will accrue interest and have administrative priority, the Loan is not payable until January
11 31, 2012. Moreover, the Debtor was not required to provide the additional incentives for the
12 Loan set forth in Section 364(c). In consideration of the foregoing, the Debtor determined that
13 obtaining the Loan from the Trust is in the best interests of the Debtor and its estate.

14 **3.    THE LOAN SHOULD BE APPROVED ON AN INTERIM BASIS PENDING**
15 **A FINAL HEARING.**

16 Rule 4001(c) of the Federal Rules of Bankruptcy Procedure governs certain procedures for
17 obtaining authorization to obtain post-petition financing and provides, in relevant part, as follows:

19 > The court may commence a final hearing on a motion for authority
20 > to obtain credit no earlier than 14 days after the service of the
> motion. If the motion so requests, the court may conduct a hearing
> before such 14 day period expires, but the court may authorize the
21 > obtaining of credit only to the extent necessary to avoid immediate
> irreparable harm.

23 Fed.R.Bankr.P. 4001(c)(2).

24 Here, as set forth above, the Debtor requires the Loan in order to pay the Wages as well as
25 other expenses set forth in the budget attached hereto as Exhibit "2," including expenses for
26 insurance and rent. If the Debtor does not pay the Wages, the Debtor may lose some or all of its
27 employees and lose the ability to continue its operations, which would harm the Debtor and all

1    other creditors.    Similarly, if the Debtor does not maintain appropriate insurance or pay rent, the
2    estate may incur large administrative claims.    In consideration of the foregoing, the Debtor
3    submits that it may incur immediate irreparable harm if it is not allowed to obtain the Loan and
4    pay the Wages and expenses set forth in Exhibit "2."

5    **4.    THE DEBTOR HAS SATISFIED ALL PROCEDURAL REQUIREMENTS**
6    **REGARDING APPROVAL OF THE LOAN.**

7    Rule 4001(c) of the Federal Rules of Bankruptcy Procedure sets forth procedural
8    requirements for obtaining post-petition credit.    There are three general provisions of Bankruptcy
9    Rule 4001(c).    First, the motion must contain a concise statement of the relief requested and the
10    material terms of the proposed loan and the order thereon, as well as a copy of the underlying
11    credit agreement and proposed form of order.    This statement is provided in the first pages of this
12    Motion.    The Credit Agreement is attached hereto as Exhibit"3."    The proposed form of interim
13    order is attached hereto as Exhibit "4."    Second, a summary of each provision set forth in
14    Bankruptcy Rule 4001(c)(1)(B) (i) – (xi), if any such provisions are included in the underlying
15    loan agreement or proposed order.    None of these terms are included in the Credit Agreement or
16    proposed form of interim order.    Accordingly, no summary is required.    Third, the Motion is
17    required to be served on a creditors' committee or on the twenty largest unsecured creditors if
18    there is no committee and on such other parties as the Court directs.    Here, the Debtor served the
19    Motion on the Office of the United States Trustee, all alleged secured creditors and their counsel
20    (if known), and the Debtor's 20 largest unsecured creditors via overnight mail.

21    **III.**

22    **CONCLUSION**

23    **WHEREFORE**, the Debtor respectfully requests that this Court hold a hearing on the
24    Motion and issue an order:

25    (1)    affirming the adequacy of the notice given;

26    (2)    finding that the relief requested in the Motion insofar as it relates to the payment
27    of Wages is necessary to avoid immediate and irreparable harm;

28

20

Case 2:11-bk-40120-ER    Doc 6    Filed 07/19/11    Entered 07/19/11 15:57:33    Desc
Main Document    Page 25 of 48

1    (3)    authorizing the Debtor to (i) pay and/or honor all pre-petition priority Wages, plus all applicable federal and state withholding taxes and workers' compensation charges, to the Employees as requested herein, including, without limitation, any outstanding checks for Wages issued pre-petition to the Employees and the issuing of replacement checks to the extent necessary to pay such Wages; and (ii) honor accrued vacation and leave benefits in the ordinary course of business, provided that no employee shall receive in value over $11,725 on account of such pre-petition claims for Wages and vacation and leave benefits;

(4)    authorizing the Debtor to draw down so much of the Loan that is needed to fund the Wages and operating expenses pending a final hearing on the Motion;

(5)    setting a final hearing on the Motion, insofar as it relates to authorizing the Debtor to obtain the Loan; and

(6)    granting such other and further relief as the Court deems just and proper.

Dated: July 19, 2011                  PACIFICUS REAL ESTATE GROUP

*/s/ Todd M. Arnold*
RON BENDER
TODD M. ARNOLD
LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.
Proposed Counsel for Debtor and
Debtor in Possession

21

**DECLARATION OF PAUL J. GIUNTINI**

I, PAUL J. GIUNTINI, hereby declare as follows:

1.      I am over 18 years of age.   Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I am the President of PacificUS Real Estate Group, a California corporation and the Chapter 11 debtor and debtor in possession herein (the "Debtor").  I make this declaration in support of the Motion to which this declaration is attached.   Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion.

3.      PacificUS Real Estate Group, a California corporation and the Chapter 11 debtor and debtor in possession herein (the "Debtor"), commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on July 14, 2011 (the "Petition Date").  The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      The Debtor owns the following equity interests (the "Equity Property"):

        a.  100% of the equity of PJG/LP Corp., a California corporation ("PJG/LP") – PJG/LP has passive investments in limited partnerships in real estate with no other current or past activities.  I estimate that the Debtor's equity interest in PJG/LP is worth approximately $1 million.

        b.  100% of the equity of CFG Realty, Inc., a Delaware corporation ("CFG Inc."), the sole member of CFG/SC, LLC, a Texas limited liability corporation ("CFG LLC"), the general partner and 1% owner of Santa Clarita Investors L.P., a Texas limited partnership ("Santa Clarita LP") – Santa Clarita LP has passive investments.   Santa Clarita LP has an option from Petro Resources (a non-affiliated Texas corporation) for 86.8 acres located in Santa Clarita.   Santa Clarita LP entered into option agreement with Heritage Hills Ranch, LLC

22

regarding the subject property. PJS Investment Corp. and Petro Resources (a non-affiliated Texas corporation) are the limited partners. I estimate that the Debtor's equity interest in the foregoing entities is worth $0.

c. 100% of the equity of Heritage Hills Ranch, LLC ("Heritage Hills LLC") – Heritage Hills LLC was established to obtain entitlements for the 86.8 acres under option from Santa Clarita LP. I estimate that the Debtor's equity interest in Heritage Hills LLC is worth approximately $5 million.

d. 30% of the equity of PacSun, LLC ("PacSun LLC") – PacSun LLC currently has receivables in excess of $9 million. I estimate that the Debtor's equity interest in PacSun LLC is worth approximately $3.3 million.

5. The Debtor's personal property, other than the Equity Property, includes, furniture, fixtures, equipment, and tenant improvements at a leased office location (the "Personal Property") with a total fair market value of approximately $81,003.02 calculated as cost, less accumulated depreciation.

6. In addition to the Equity Property and the Personal Property, the Debtor also owns contiguous parcels of real property located at 7733, 7739 Fish Camp Lane, 7625 Forest Drive, Mariposa, CA, and 1195 Highway 41, Fish Camp, CA 93623 and commonly referred to as the "SilverTip Property." The SilverTip Property, which is located at the south entrance of Yosemite National Park, is extremely unique and includes the following:

a. approximately .18 acres on which there is an existing post office building of approximately 1,120 square feet (the "Post Office Property"). The United States Government is the tenant on the Post Office Property and pays monthly rent of approximately $2,100. Such monthly rent will be placed into a segregated account and will not be used without further order of the Court or the agreement of any secured creditors with an interest in such rent.

b. approximately 2.56 acres zoned for family / residential use in lots with a minimum size of .5 acres (the "Residential Property").

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      c.  approximately 44.64 acres zoned for resort / commercial use (the "Resort Property"). The Resort Property is fully entitled for the development of a resort hotel consisting of (a) a 4-story, 137 room main hotel & spa (approximately 112,000 square feet), (b) 30 chalets with 3 rooms each (approximately 54,000 square feet), (c) a main conference center (approximately 11,000 square feet), (d) 20 apartment units (approximately 14,000 square feet), (e) a commercial building (approximately 14,000 square feet), and (f) roads, parking, trails and appurtenant uses, and an on-site waste water treatment. It took the Debtor over 10 years to obtain the foregoing entitlements, and the Debtor believes that obtaining such entitlements on a similar property would take longer and be more expensive and riskier. The Debtor holds all major federal and state permits and clearances required to develop the Real Property as set forth above.

      d.  approximately .46 acres on which there is a gas station (the "Residential Property") that is not operating and has not operated for some time.

7.    The Debtor is concurrently seeking to sell the SilverTip Property or to obtain a joint venture partner to fully develop the SilverTip Property.

8.    On or about March 16, 2011, the Debtor obtained an appraisal for the Resort Property, which provided an appraised value of $18.5 million on an "as-is" basis.

9.    OneWest Bank, FCB (the "Bank") (successor to La Jolla Bank, FSB) allegedly has a first trust deed against the SilverTip Property securing a claim in the amount of approximately $5,587,158 for a loan made to the Debtor (the "Loan"). Evelyn and Robert Keller (the "Kellers") allegedly have second and third trust deeds against the Post Office Property, the Residential Property, and the Resort Property securing a claim in the total amount of approximately $650,022.

10.    The Loan matured in July 2010. The Bank filed a notice of default and scheduled a foreclosure sale of the SilverTip Property for July 15, 2011. In order to protect the Debtor's interest in the approximately $12.2 million of equity in the SilverTip Property, as well as the interests of the Debtor's unsecured creditors, the Debtors were forced to file their bankruptcy case. The Debtors

intend to reorganize through a sale of the SilverTip Property or a joint venture to develop the SilverTip Property. The Debtor needs some time to accomplish either of the foregoing.

11. The Debtor currently employs ten (10) individuals (the "Employees"). Three (3) of the Employees are insiders and seven (7) of the Employees are non-insiders. Four (4) of the non-insider Employees provide services to Hatchet Ranch L.C. ("Hatchet Ranch"), an unaffiliated entity for which the Debtor provides management services for a monthly fee of $5,000.

12. The Employees are paid bi-weekly. The last pay period covered July 2, 2011 through July 15, 2011 (the "Pay Period"). Accordingly, since the Debtor's bankruptcy petition was filed on July 14, 2011, nearly all Wages for the Pay Period accrued pre-petition. In particular, the Wages to be paid to the employees for the pre-petition portion of the Pay Period are approximately $16,454.55, plus all applicable federal and state withholding taxes and workers' compensation charges. All Wages and related payroll taxes are paid through ADP, the Debtor's payroll processor. Hatchet Ranch reimburses the Debtor for all funds transferred to ADP to pay the Wages for the four (4) Employees providing services for Hatchet Ranch. In order to fund the wages for the Pay Period, the Debtor must fund ADP by July 20, 2011.

13. The Employees have also accrued vacation and leave benefits pre-petition. In the ordinary course of the Debtor's business, the Employees are authorized to take their accrued vacation or leave time in connection with their continued service. Maintaining good relationships with, and the morale of, the Employees requires continuing to honor vacation and leave policies currently in effect for the Employees.

14. In my opinion, the Debtor cannot continue to operate and reorganize, or obtain management fees from Hatchet Ranch, without the Employees. If the Debtor does not continue to pay the Employees their ordinary and earned Wages and continue to honor employee benefits, the morale of the Employees will drop significantly, and the Employees will likely quit. Without the Employees, the Debtor's operations and the value of its business will be severely impaired, if not eviscerated altogether. The Debtor must retain the Employees to remain in business and preserve

25

1   the value of its assets. Based on the foregoing, I respectfully submit that the relief requested in the
2   Motion is necessary to avoid immediate and irreparable harm.

3   15. Pursuant to the Motion, the Debtor is seeking to pay the Employees their Wages.
4   The Debtor is not seeking authority to pay the pre-petition priority Wages of any "insiders" at this
5   time. Insiders are included in Exhibit "1" hereto showing all pre-petition priority wages. Insiders
6   are denoted by shading in Exhibit "1." Notices of Setting Insider Compensation will be/have been
7   filed with the United States Trustee for all insiders. Only once the Motion is granted and the
8   deadline to respond to the Notices of Setting Insider Compensation has passed without objection, or
9   any objections to the notices have been resolved, will the Debtor pay the pre-petition priority wages
10  of the insiders included in Exhibit "1."

11  16. Attached hereto as Exhibit "1" is a summary report that reflects the amount of
12  Wages the Debtor intends to pay to the Employees on July 22, 2011 (or as soon as practicable
13  thereafter) for period covering July 2, 2011 through July 15, 2011. All of the Employees who the
14  Debtor intends to pay on July 22, 2011 are still employed by the Debtor.

15  17. In order to attract and retain Debtor's Employees, among other things, the Debtor
16  maintains what I believe are competitive and reasonable vacation and leave benefits policies. I
17  believe that maintaining good relationships with, and the morale of, the Employees requires
18  continuing to honor vacation and leave policies currently in effect for the Employees.

19  18. I believe that, through the Debtor's Chapter 11 case, the Debtor will be able to
20  restructure its debts in a timely and efficient manner.

21  19. To the extent that any Employees' pre-petition claim is in excess of the $11,725
22  limit established by Section 507(a)(4) of the Bankruptcy Code, such portion of the pre-petition
23  claim will be treated as a general unsecured claim. No Employee shall receive in value over
24  $11,725 on account of pre-petition priority claims for Wages and vacation or leave benefits.

25  20. Based on the Debtor's current assets and debts, I do not believe that the payment
26  of pre-petition priority claims for Wages and vacation and leave benefits will render the estate
27  administratively insolvent.

28

21.    As of the Petition Date, the Debtor only had approximately $31,000 in its bank accounts. Some of these funds may constitute the "cash collateral" of the Bank or the Kellers. The Debtor would need to obtain approval form the Bank, the Kellers, and/or the Court in order to use any "cash collateral." The Debtor intends to fund operations through unsecured third-party lending to avoid "cash collateral" issues. Accordingly, the foregoing funds will be segregated and will not be disbursed without the required approval. Therefore, the Debtor essentially has no money it can use to pay the Wages and fund its operations

22.    Leading up to the Petition Date, the Debtor has often funded Wages and other operational expenses, in part, through loans from me thorough my trust, The Paul J. Giuntini Revocable Trust Dated July 31, 1997 (the "Trust"). The Debtor wishes to obtain an additional loan from the Trust in the form of a revolving line of credit in an amount up to $250,000 in order to pay the Wages and to fund operations (the "Loan") as set forth in Exhibit "2" hereto. I have agreed to provide such Loan pursuant to the Revolving Credit Agreement attached hereto as Exhibit "3" (the "Credit Agreement"). A summary of the terms of the Credit Agreement are as follows: (a) $250,000 limit, (b) 10% interest per annum, compounded monthly, (c) due and payable on January 31, 2012, and (d) an event of default occurs if the Debtor fails to timely pay amounts owed under the Credit Agreement Pursuant to Section 364(b) of the Bankruptcy Code, amounts owed for the Loan will be allowed under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

23.    As set forth above, the Debtor requires the Loan in order to pay the Wages as well as other expenses set forth in the budget attached hereto as Exhibit "2," including expenses for insurance and rent. If the Debtor does not pay the Wages, the Debtor may lose some or all of its employees and lose the ability to continue its operations, which would harm the Debtor and all other creditors.

///

///

///

24.     Similarly, if the Debtor does not maintain appropriate insurance or pay rent, the estate may incur large administrative claims. In consideration of the foregoing, the Debtor submits that it may incur immediate irreparable harm if it is not allowed to obtain the Loan and pay the Wages and expenses set forth in Exhibit "2."

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of July 2011, at Pasadena, California.

PAUL J. GIUNTINI

# EXHIBIT 1

**EXHIBIT 1**

| Name | Insider (Y/N) | Rate | | Basis (hourly, salary) | Hours | | Total Wage | | 90% |
|---|---|---|---|---|---|---|---|---|---|
| Bryant, Arnica | N | $ | 20.00 | hourly | 0 | $ | - | $ | - |
| Carlsberg, Barbara | N | $ | 500.00 | salary | n/a | $ | 500.00 | $ | 450.00 |
| Devries, Jamie | N | $ | 923.08 | salary | n/a | $ | 923.08 | $ | 830.77 |
| Young, Jerome | N | $ | 1,538.47 | salary | n/a | $ | 1,538.47 | $ | 1,384.62 |
| | | | | | | | | $ | 2,665.40 |
| Giuntini, David | Y | $ | 1,150.00 | salary | n/a | $ | 1,150.00 | | |
| Jameson, John | Y | $ | 5,462.30 | salary | n/a | $ | 5,462.30 | | |
| Kramer, Susan | Y | $ | 62.2172 | hourly | 27.75 | $ | 1,726.53 | | |
| Miledi, Sylvia | N | $ | 2,173.08 | salary | n/a | $ | 2,173.08 | | |
| Moreno, Patricia | N | $ | 15.2978 | hourly | 68 | $ | 1,040.25 | | |
| Scheer, Jennifer | N | $ | 31.9571 | hourly | 70 | $ | 2,237.00 | | |
| | | | | | | $ | 13,789.15 | | |
| | | | | | | | | $ | 16,454.55 |

# EXHIBIT 2

**EXHIBIT 2**

## EXHIBIT "2"

## MONTHLY BUDGET

| | |
|---|---|
| Rent | $17,100.00 |
| Payroll (includes Workers Comp) | 30,000.00 |
| Insurance (GL, Property, Auto) | 3,500.00 |
| Miscellaneous Administration * | 10,000.00 |
| | $60,600.00 |

* Health Insurance, Telephone, Office Supplies, Auto Leases

# EXHIBIT 3

**EXHIBIT 3**

## REVOLVING CREDIT AGREEMENT

THIS REVOLVING CREDIT AGREEMENT (the "Agreement") is made as of this 18th day of July 2011, by and between THE PAUL J. GIUNTINI REVOCABLE TRUST DATED JULY 31, 1997 ("Lender") and PACIFICUS REAL ESTATE GROUP DEBTOR-IN-POSSESSION, a California corporation ("Borrower").

### SECTION I

1.1     Commitment to Lend. Subject to the terms and conditions of this Agreement and so long as no Event of Default occurs, Lender agrees to extend to the Borrower the credit accommodations that follow.

1.2     Revolving Line of Credit. Subject to the terms that follow, Lender agrees to make loans and advances to Borrower, upon Borrower's request made prior to the Expiration Date, up to a total principal amount from time to time outstanding of not more than Two Hundred Fifty Thousand Dollars ($250,000.00) (the "Line of Credit").

A.     Purpose. Advances made under the Line of Credit will be used to fund the Borrower's working capital needs.

B.     Promissory Note. Advances under the Line of Credit shall be evidenced by a promissory note (the "Demand Note").

C.     Interest. Interest shall accrue from the date of each Advance under the Line of Credit at a rate that is the lesser of ten percent (10%) per annum or the maximum rate allowable by applicable law, compounded monthly.

Interest on any Advance under the Line of Credit shall be computed on the basis of 365 days per year, and charged on the actual number of days elapsed. Any unpaid interest shall be compounded on a monthly basis and shall be added to the principal and thereafter bear interest.

D.     Principal. The payment of the outstanding principal balance of all Advances, together with accrued and unpaid interest thereon, shall be due and payable on or before the Expiration Date.

E.     Expiration of Line of Credit. Unless earlier terminated in accordance with the terms of this Agreement, Lender's commitment to make Advances to Borrower shall automatically expire on January 31, 2012 (the "Expiration Date"), provided, however, Lender and Borrower may extend this Agreement for one (1) additional six (6) month period, by mutual agreement.

F.     Termination by Borrower. Following and conditioned upon the repayment in full of all indebtedness owed by the Borrower to the Lender under this

34

Agreement, Borrower upon written notice to Lender may elect to terminate this Agreement prior to the Expiration Date.

1.3     Disbursement of Proceeds from Advances.  Any Advance made hereunder shall be conclusively presumed to have been made to and for Borrower's benefit when the proceeds of such Advance are disbursed in accordance with Borrower's instructions.

1.4     Obligation for Repayment.  Borrower is liable for the repayment to Lender of any and all monies, together with interest thereon, disbursed under this Agreement, on demand.  By Borrower's execution of this Agreement, Borrower unconditionally and irrevocably promises to repay all indebtedness incurred hereunder.

1.5     Repayment.  Borrower shall be permitted to repay without penalty or charge, all or any portion of Advances outstanding under the Line of Credit at any time. Any repayments shall be applied first to any accrued and unpaid interest and the remaining portion (if any) shall then be applied to reduce the outstanding principal balance under the Line of Credit.

## SECTION II

2.     Events of Default.  The following described event shall constitute an event of default ("Event of Default") under this Agreement:

A.     Non-Payment.  The Borrower shall fail to pay any payment of principal or interest when due.

## SECTION III

3.     Remedies of Default.  Upon the occurrence of any Event of Default the Lender may in his sole and absolute election, without demand and upon only such notice as required by law:

A.     Declare any or all of the Borrower's indebtedness owing to the Lender under this Agreement immediately due and payable.

B.     Cease making Advances or otherwise extending credit to or for the account of the Borrower under this Agreement.

C.     Terminate this Agreement as to any future obligation of the Lender.

## SECTION IV

4.1     In the event of any action in relation to this Agreement, the prevailing party, in addition to all other sums to which it may be entitled, shall be entitled to reasonable attorneys' fees.

4.2 All notices, payments, requests, and demands which either party hereto may desire, or may be required to give or make to the other party, shall be given to such party by hand delivery or through deposit in the United States mail, postage prepaid, addressed to the address set forth below such parties signature to this Agreement or to such other address as may be specified from time to time in writing by either party to the other.

4.3 No language or provision of this Agreement shall be interpreted either for or against any party by virtue of any party or any attorney or any party having drafted such language or provision.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

"BORROWER"

PACIFICUS REAL ESTATE GROUP,
DEBTOR-IN-POSSESSION,
a California corporation

By: Paul J. Giuntini, President
2 North Lake Avenue, Suite 820
Pasadena, California 91101

"LENDER"

THE PAUL J. GIUNTINI REVOCABLE TRUST
DATED JULY 31, 1997

By: Paul J. Giuntini, Trustee
2 North Lake Avenue, Suite 820
Pasadena, California 91101

## DEMAND NOTE

$250,000.00                     Pasadena, California                     July 18, 2011

    1.    PACIFICUS REAL ESTATE GROUP DEBTOR-IN-POSSESSION, a California corporation ("Borrower"), for value received, promises to pay THE PAUL J. GIUNTINI REVOCABLE TRUST DATED JULY 31, 1997 ("Lender"), the principal sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), or so much of such amount as may be advanced by Lender from time to time. Interest will accrue on the principal balance outstanding from time to time at the lesser of TEN PERCENT (10%) per annum, or the maximum rate allowed by applicable law, compounded monthly. The entire principal and interest will be due and payable upon demand, but not before January 31, 2012. Said principal and interest shall be due and payable to The Paul J. Giuntini Revocable Trust Dated July 31, 1997 at 2 North Lake Avenue, Suite 820, Pasadena, California 91101 or such other place as holder shall designate. Principal and interest shall be payable in lawful money of the United States.

    2.    Should the indebtedness represented by this Note or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection upon default, Borrower agrees to pay, in addition to the principal, interest and other sums due and payable hereon, all costs of collecting or attempting to collect this note, including reasonable attorneys' fees and expenses.

    3.    All parties now or hereafter liable with respect to this Note, hereby severally waive presentment for payment, demand, protest, notice of protest and notice of nonpayment or dishonor.

    4.    This Note shall be governed by, and construed and enforced in accordance with, the laws of California.

    IN WITNESS WHEREOF, the Borrower has caused this Note to be duly executed.


"BORROWER"

PACIFICUS REAL ESTATE GROUP,
DEBTOR-IN-POSSESSION,
a California corporation

By: _____
    Paul J. Giuntini
Its:   President
       2 North Lake Avenue, Suite 820
       Pasadena, California 91101

# EXHIBIT 4

**EXHIBIT 4**

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com, tma@lnbyb.com

Proposed Counsel for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:11-bk-40120-ER |
| PACIFICUS REAL ESTATE GROUP, a California corporation, | Chapter 11 |
| Debtor and Debtor in Possession. | **ORDER RE: DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) PAY PRE-PETITION PRIORITY WAGES; (2) HONOR ACCRUED VACATION AND LEAVE BENEFITS; AND (3) OBTAIN UNSECURED CREDIT ENTITLED TO ADMINISTRATIVE PRIORITY PURSUANT TO 11 U.S.C. § 364(b)** |
| | **Hearing**<br>Date:<br>Time:<br>Place:  Courtroom 1568<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

39

1    A hearing was held at the above-referenced date, time, and location to consider the

2    emergency motion (the "Motion") file by PacificUS Real Estate Group, a California corporation

3    and the Chapter 11 debtor and debtor in possession herein (the "Debtor"), for the entry of an order

4    authorizing the Debtor (1) to pay pre-petition priority wages, commissions, benefits, and

5    reimbursable expenses (collectively, "Wages") to the Debtor's employees, (2) to honor pre-

6    petition accrued vacation and leave benefits in the ordinary course of the Debtor's business,

7    provided that no employee shall receive in value over $11,725 on account of the foregoing pre-

8    petition claims, and (3) to obtain unsecured credit in an amount up to $250,000 entitled to

9    administrative priority pursuant to 11 U.S.C. § 364(b) in order to pay the Wages and certain other

10    operating expenses of the Debtor.  Appearances were made as set forth on the record of the Court.

11    Upon consideration of the Motion, all papers filed in support of, and in opposition to, the

12    Motion, the entire record in this case, and the arguments of counsel at the hearing on the Motion,

13    and for good cause shown,

14    IT IS HEREBY ORDERED THAT:

15    1.    Notice of the Motion was sufficient and appropriate under the circumstances and

16    complied with all applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy

17    Procedure, and the Local Bankruptcy Rules, as may have been modified by other orders of the

18    Court;

19    2.    To the extent applicable, Fed.R.Bankr.P. 4001(c) and 6003(b) have been satisfied

20    in that the Debtor has made a showing that immediate and irreparable harm is likely to occur if

21    the Motion is not granted;

22    3.    The Motion is granted in its entirety except as modified by this Order;

23    4.    The Debtor is authorized to (a) pay and/or honor all pre-petition priority Wages (as

24    defined in the Motion), plus all applicable federal and state withholding taxes and workers'

25    compensation charges, to the Employees as requested herein, including, without limitation, any

26    outstanding checks for Wages issued pre-petition to the Employees and the issuing of replacement

27    checks to the extent necessary to pay such Wages; and (b) honor accrued vacation and leave

28

2

40

benefits in the ordinary course of business, provided that no employee shall receive in value over $11,725 on account of such pre-petition claims for Wages and vacation and leave benefits;

5.      The Debtor is authorized to draw down so much of the Loan that is needed to fund the Wages and operating expenses pending a final hearing on the Motion;

6.      Amounts owed for the Loan will be allowed under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.

7.      A final hearing on the Motion, insofar as it relates to authorizing the Debtor to obtain the Loan is hereby set for _____, 2011, at ___:___ ___.m.

**IT IS SO ORDERED.**

3

41

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as: **DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) PAY PRE-PETITION PRIORITY WAGES; (2) HONOR ACCRUED VACATION AND LEAVE BENEFITS; AND (3) OBTAIN UNSECURED CREDIT ENTITLED TO ADMINISTRATIVE PRIORITY PURSUANT TO 11 U.S.C. § 364(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PAUL J. GIUNTINI IN SUPPORT THEREOF**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Todd M Arnold   tma@lnbrb.com**
- **Ron Bender   rb@lnbrb.com**
- **Dare Law   dare.law@usdoj.gov**
- **United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov**
- **Hatty K Yip   hatty.yip@usdoj.gov**

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **July 19, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| *BY OVERNIGHT MAIL* | *BY OVERNIGHT MAIL* |
|---|---|
| Hon. Ernest M. Robles | Dare Law |
| U.S. Bankruptcy Court/Los Angeles Div. | Hatty K Yip |
| Edward R. Roybal Fed. Bldg. & Courthouse | Office of the U.S. Trustee |
| 255 E. Temple Street, Suit 1660 | 725 S Figueroa St 26th Fl |
| Los Angeles, CA 90012 | Los Angeles, CA 90017 |

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 19, 2011 | TRISH MELENDEZ | *TRISH MELENDEZ* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

5142

**F 9013-3.1.PROOF.SERVICE**

## *ALL SERVED BY OVERNIGHT MAIL*

### SECURED

Evelyn & Robert Keller
P.O. Box 13
Fish Camp CA 93623-0000

OneWest Bank
John Spelke
2450 Broadway, Suite 500
Santa Monica CA 90404-0000

### 20 LARGEST

Barbara H. Carlsberg
2 N. Lake Ave., Suite 820
Pasadena, CA 91101

Wells Fargo Bank
Payment Remittance Center
P.O. Box 54349
Los Angeles, CA 90054-0349

Bank of America
P.O. Box 301200
Los Angeles, CA 90030-1200

Financial Pacific Leasing
P.O. Box 749728
Los Angeles, CA 90074-9728

Bankdirect Capital Financial
P.O. Box 660448
Dallas, TX 75266-0448

Acura Financial Services
P.O. Box 60001
City of Industry, CA 91716-0001

BMW Financial Services
P.O. Box 78103
Phoenix, AZ 85062-8103

Mercedes Benz Financial
P.O. Box 9001680
Louisville, KY 40290-1680

Mitel Leasing, Inc.
P.O. Box 972448
Dallas, TX 75397-2448

The Hartford
P.O. Box 2907
Hartford, CT 06104-2907

Patricia Maria Moreno
125 S. Avenue 53 #13
Los Angeles, CA 90042

Los Angeles County Tax Collector
P.O. Box 54027
Los Angeles, CA 90054-0027

5142